Joseph Catchot et al. *v.* Town of Ocean Springs et al.

1. Evidence. *Supervisor's court record. Affidavit.*

An *ex parte* affidavit stating the recollection of the affiant touching the contents of a record of the board of supervisors, is not admissible in evidence to prove the record even as against the affiant.

2. Trespass to Property. *Want of value.*

The fragility and worthlessness of property is not itself a defense to an action of trespass for its destruction.

FROM the circuit court of Jackson county.

HON. THADDEUS A. WOOD, Judge.

The suit was an action of trespass to land by the appellants, Catchot and others, plaintiffs in the court below, against the appellees, the town of Ocean Springs and one Jerry O'Keefe, defendants. The property involved is a small piece of land and a dilapidated wharf and oyster shed, within the town, but at the water's edge, on the Gulf of Mexico. On the trial the plaintiffs, claiming title by adverse possession, offered evidence tending in some degree to show that their father, Antonio Catchot, took actual adverse possession of the land between 1850 and 1854, and erected a small wharf and shed thereon, which he occupied and used in the oyster business until his death, in 1885, and that the plaintiffs, his heirs (he having died intestate), held possession thereof adversely until April, 1894, when the defendants ousted them, destroying the wharf and demolishing the shed. The defendants on cross-examination required one of the plaintiffs, who had been introduced as a witness, Mrs. Elizabeth Catchot, the widow of the decedent, to produce, over plaintiff's objection, the certificate or affidavit referred to in the opinion of the court, and the same was read in evidence. It is as follows:

"State of Mississippi, Jackson county. This is to certify that we, the undersigned citizens of the town of Ocean Springs, county and state aforesaid, recollect that, at a meeting of the board of supervisors (police) of said county in the year 1860, there was an ordinance passed granting unto Antonio Catchot, of the town of Ocean Springs, a right of property at the foot of Jackson avenue. It was at that time water; since then made land by the said Antonio Catchot, and known and designated as his oyster shop, the same having a length of sixty feet and a width of fifty feet. We also swear that we saw a transcript of said order, which has since been destroyed by fire at the burning of the courthouse of said county. The above privilege was granted unto said Antonio Catchot for life for

services he had rendered the state by saving the life of Captain Charles Walker in the great storm of the same year.

"ANTONIO CATCHOT.

"E. CATCHOT.

"Sworn to and subscribed before me this the first day of June, A.D. 1895.                     H. H. MINOR."

The wharf and oyster shed were shown to have been of insignificant value. The evidence was conflicting as to whether the property was in or without the street. Other facts are stated in or are inferable from the opinion of the court. The judgment of the court below was in defendants' favor and plaintiffs appealed.

*Harper & Potter*, for appellants.

If title had ripened by adverse possession of forty years in the Catchots, then it is certain that no people were ever treated more harshly and unjustly in a civilized country by the authorities over them. They were turned out of possession, their property cut away, torn down, and, because of their attempt to exercise ownership, they were placed under arrest. All these facts stand in the record undisputed.

By way of defense appellees introduce in evidence, over the objection of appellants, a paper signed by Mrs. Cachot and her deceased husband, which sets out that at a meeting of the board of supervisors of Jackson county, in 1860, it passed an order granting to Antonio Catchot a right of property at the foot of Jackson avenue, that the privilege was granted for life for services rendered to the state by saving the life of Captain Charles Walker. The paper was signed in 1885. Whether or not in point of fact there was ever any such order made, or whether the whole thing was a hoax, cannot be told by the record. Antonio Catchot, one of the parties signing it, was dead, and his wife, by whom it was sought to be proved, testifies that she never saw the order, and did not in fact know that it was ever made, and no witness was ever introduced that testified

that any such order had ever in fact been made.    Clearly, then, the only possible relevancy would be to show by the admissions of Mrs. Catchot that appellants held subject to and under the title of their landlord, the board of supervisors, and this is the view taken by the circuit court.    The error that the court fell into was in holding that this paper intended to show a contract between Catchot and the board whereby he became the county's tenant for life or at sufferance, when in fact it proves nothing of the kind, and no part of the record, except this paper, points in any way to any relation of landlord and tenant, or that the board ever in any way consented to the use of the land, or as it was then, water by Catchot.    Another ground of error to the court's ruling on the admissibility of this paper is that there is no satisfactory proof that the alleged landlord ever had any kind of right, title or interest in the land in question.

*A. Y. Harper,* on same side.

As the plaintiffs had been in actual possession of the premises for years and years, and no one to dispute their right to its peaceable possession, and as Joe Catchot, one of the plaintiffs and tenants in common, was in the actual possession of the premises at the time of the unlawful entry, and protested against such entry and the destruction of his wharf and platform, and urged the workmen to desist from such unlawful acts, as testified by him and admitted by the workmen themselves, it is hardly worth while to discuss the title to the premises.

It was at one time supposed that actual possession alone could justify the foundation for an action of trespass *quare clausum fregit,* but such is not now the rule.

"At one time it was doubtful whether this action would lie at all where there was no actual possession, and the *locus in quo* was in a wild, unoccupied state, but it has long since been settled in this country from the necessity of the case, not that the action would lie without the possession, but it will lie in

that possession which the law implies in the owner of the land when no other person in point of fact is on it. In such case the owner has constructive possession." *Batget* v. *Blake*, 1 Tenn., 222; *Stevenson* v. *Wilson*, 37 Wis., 482; *Gillerpin* v. *Dew*, 18 Am. Dec., 42; *Gould* v. *Sternburg*, 4 Ill., 439.

*Miller & Ford*, for appellees.

The appellants, heirs of Antonio Catchot, were mere licensees or tenants at sufferance of the town of Ocean Springs, and as such were not entitled to notice to quit, and the action of the mayor and board of aldermen in leasing out the wharfage privilege at the foot of Jackson avenue was a complete revocation of their license or tenancy, and O'Keefe, as lessee of the town, had the right, under the laws of this state, to take possession of the premises as he did without injury to them, and no action of trespass can be maintained either against him or the town for damages. The jury were warranted, under the instructions of the court and the evidence in the case, in finding that O'Keefe's wharf did not cover any portion of the land claimed by Antonio Catchot under the grant from the board of police in 1860, and therefore there was no right of action in the plaintiffs jointly to maintain this suit, even though a trifling damage was done to an old, dilapidated wharf claimed by Joe Catchot individually.

The evidence established beyond doubt that Antonio Catchot was a tenant of the board of police and board of supervisors until his death, in 1885. The affidavit made by him and his wife on the first day of June, 1885, introduced in evidence, is conclusive against him and his heirs that his possession of the foot of this street was by permission of the board of police for life. The rule in this state is conclusively settled that the heir of a tenant for life, at will or at sufferance, remaining in possession after the death of his ancestor, cannot set up his possession as adverse to the owner. *Leybrook* v. *Hall*, 73 Miss., 513;

*Claughton* v. *Claughton*, 70 Miss., 386; *Jones* v. *Sherman*, 56 Miss., 565.

WHITFIELD, C. J., delivered the opinion of the court.

The paper called the certificate or affidavit, reciting what the signers "recollected" the board of supervisors to have done, etc., was clearly incompetent and very probably weighed materially with the jury. The contention that the town is not liable for the independent and unauthorized act of its lessee, O'Keefe, is good enough law, but the evidence is that the town marshal "broke down the shed," "tore down the fence," and prevented the appellants from rebuilding, etc. There is some evidence to show that the property appellants claim was not a part of the street, but the record is far from being clear on this. We understand the appellants to stand on adverse possession of land, made and occupied by their ancestor, for more than forty years, as furnishing the ground to maintain this action of trespass, and that the mere unlawful entry entitled them to actual damages, however small. We find great difficulty in picking out from the very confused and unintelligible record exactly what the grounds of appellants' claim were. But we think the fair inference from the whole evidence is that they claim as stated. The fragility of the structure the appellants chose to call home and oyster shop, cannot take from them the right of ownership, if proven. The law shields all homes and all property, however humble or however splendid. If the appellants were the real owners by forty years adverse possesssion, it was not for the town to ignore their title because of the unusual character of the property in its origin or its use.

The town should have made itself sure of its right to destroy before thus arbitrarily proceeding. To destroy because it could not understand how such property could be used or owned, or because it saw the title existing only through the shadows of forty years' possession unbased on deed, and hence doubted the title, was to "crush the wings of the butterfly to

get at the secret of their tints.'' If the legal tints of appellants' title or possession were obscure and hard to discover, it was better to have looked for them through the magnifying glass of the law, in the light shed by the facts, rather than to have attempted thus ruthlessly to stamp them out. Rights are not to be dealt with in this airy fashion, no matter how humble those who assert them. It may be the extent of the right here is small, but, whatever it is, it is sacred from spoliation. The peremptory instruction should not have been given for the town.

*For the two errors indicated the judgment is reversed and cause remanded.*